# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| EDWARD KOREN | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 12-1586 |
| | : | |
| | : | |
| FRANK NOONAN and MARIA FINN | : | |
|     Defendants. | : | |
| | : | |

## MEMORANDUM OPINION

Rufe, J.                                                                                                                                             October 2, 2013

Plaintiff Edward Koren, a retired Pennsylvania State Police Lieutenant, filed suit against Defendants, the Commissioner and an employee of the State Police, alleging that Defendants acted to scuttle Plaintiff's candidacy for elective office by insinuating to the media that because Plaintiff did not retire with an honorable discharge, he committed serious misconduct. The Court granted Defendants' motion to dismiss for failure to state a claim upon which relief could be granted, and Plaintiff timely filed a motion for reconsideration.

## I.     FACTS ALLEGED IN THE COMPLAINT

Plaintiff alleges the following facts, which are assumed to be true for purposes of the motion. Plaintiff had a distinguished career with the State Police from 1978 until he retired in 2005. At the time of his retirement, the State Police had no standard policy governing when a trooper retired with an honorable discharge, as opposed to simply retiring, and Plaintiff did not receive an honorable discharge. In 2011, Plaintiff ran as a Democrat for the office of District Attorney of Lehigh County. During the campaign, Defendant Maria Finn, acting at the direction of Defendant Frank Noonan, the Commissioner, provided false information to an area newspaper that at the time of Plaintiff's retirement, an honorable discharge was given when a member of the

State Police "did not engage in serious misconduct while employed" and that the "vast majority" of troopers retire with an honorable discharge.[1] These false statements were made to retaliate against Plaintiff for running against the sitting Republican District Attorney of Lehigh County. According to Plaintiff, Defendant Noonan in 2011 conducted a secret, second review of Plaintiff's personnel record and again denied Plaintiff an honorable discharge.[2]

## II. STANDARD OF REVIEW

Motions for reconsideration are governed by Local Rule of Civil Procedure 7.1(g) and are considered motions to "alter or amend" judgment under Federal Rule of Civil Procedure 59(e). The standard for granting a motion for reconsideration is stringent, and can only be satisfied under one of three conditions: 1) when there is new evidence; 2) where there has been an intervening change in controlling law; or 3) where there has been a clear error of law or fact that needs to be corrected to prevent manifest injustice.[3] Such motions should be granted sparingly,[4] and are "not to be used as a means to reargue matters already disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant."[5]

---

[1] Compl. ¶ 13.

[2] Compl. ¶ 27.

[3] *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999); *Brunson Communications, Inc. v. Arbitron, Inc.*, 246 F. Supp. 2d 446, 446-47 (E.D. Pa. 2003).

[4] *Douris v. Schweiker*, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002).

[5] *Abu-Jamal v. Horn*, No. 99-5089, 2001 WL 1609761, at * 9 (E.D. Pa. Dec. 19, 2001) (internal quotation omitted).

## III. DISCUSSION

### A. First Amendment Retaliation

The Court notes that Plaintiff's motion generally reargues issues already litigated in the context of the motion to dismiss, contending that he has stated a cause of action for retaliation in the exercise of his First Amendment rights, which requires Plaintiff to allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."[6] The test is objective,[7] and Plaintiff overlooks the context of this case.

At the time of the events alleged in the Complaint, Plaintiff was no longer a public employee; he had retired some years before. Instead, the alleged actions occurred when Plaintiff was campaigning to be elected to a political office. What would deter "a person of ordinary firmness from exercising his constitutional rights" as a candidate for political office is necessarily a different analysis from what constitutes harassment or termination directed at an employee.[8]

---

[6] *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

[7] *Houseknecht v. Doe*, 653 F. Supp. 2d 547, 561 (E.D. Pa. 2009).

[8] *Parks v. City of Horseshoe Bend*, 480 F.3d 837, 840 (8th Cir. 2007). The Court of Appeals for the Third Circuit has explained the importance of context:

> To amount to retaliation, the conduct must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted). In certain circumstances, such as those of public employees, that threshold is quite low. *See, e.g., O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) ("A First Amendment retaliation claim will lie for any individual act which meets this 'deterrence threshold,' and that threshold is very low: as we [have stated] ... a cause of action is supplied by all but truly *de minimis* violations") (citation omitted); *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (holding that "a campaign of petty harassments" against a public employee is sufficient to establish retaliation) (quotation marks and citation omitted). Where, however, the alleged retaliatory act is a speech by a public official on a matter of public concern, other considerations are in play. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir.

Certainly, a candidate for political office may be subjected to actionable retaliation,[9] and the Court did not otherwise hold. However, courts have recognized that "[t]he prototypical plaintiff in these cases is a government worker who loses his job . . . or a regulated entity that is stripped of its business license . . . or a prisoner who is retaliated against by prison officials . . . or citizens who are allegedly targeted by law enforcement because of their political speech activities."[10] Plaintiff does not fit within any of these categories,[11] and recognizing Plaintiff's claim, which encompasses allegedly false statements about the meaning of retirement without an honorable discharge, in the context of a political campaign, "would lead us far afield."[12] Moreover, although Plaintiff focuses on the allegation that false information about him was released, "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such

---

2000); see also *McKee*, 436 F.3d at 170 (favorably citing *Suarez*). "Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated." *Suarez*, 202 F.3d at 687; *see X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 70 (2d Cir. 1999) (stating that the First Amendment "protect[s] the legislator's right to state publicly his criticism of the granting of ... a contract to a given entity and to urge the administrators that such an award would contravene public policy"); *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C. Cir. 1991) ("If the First Amendment were thought to be violated any time a private citizen's speech or writings were criticized by a government official, those officials might be virtually immobilized.").

*Municipal Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 824-25 (3d Cir. 2009).

[9] *See, e.g., Walker v. Clearfield Cty. Dist. Atty.*, 413 F. App'x 481, 483 (3d Cir. 2011) (suggesting that in the absence of probable cause, a candidate would have a First Amendment right to run for office without being subjected to a politically motivated criminal prosecution based on false evidence).

[10] *Blair v. Bethel School Dist.*, 608 F.3d 540, 544 (9th Cir. 2010) (citations omitted).

[11] A citizen targeted by law enforcement generally involves someone who has been falsely accused of a crime. *See Walker*, 413 F. App'x at 483; *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1288-89 (9th Cir. 1999).

[12] *Smith v. Frye*, 488 F.3d 263, 270 (4th Cir. 2007) (footnote omitted). The *Smith* court also noted that a case that did not fit in the typical framework would give rise to a defense of qualified immunity. *Id.* at 270 n.5; 271 n.6.

4

speech does not adversely affect a citizen's First Amendment rights, *even if defamatory*."[13]

Plaintiff also must allege that the claimed retaliatory actions caused his injury,[14] and here again, Plaintiff fails to acknowledge that he was a candidate for office and "more is fair in electoral politics than in other contexts."[15] Although there is unquestionably a constitutional right to associate for political purposes, and for qualified voters to cast their votes effectively, as Plaintiff concedes, there is no right to be elected to political office.[16] What Plaintiff alleges is hardball politics, or at most defamation, not retaliation as recognized in the case law.[17]

Moreover, as Defendants argue, they have their own First Amendment rights to comment on the fitness of candidates for political office.[18] The courts have held that a "limitation on the

---

[13] *Suarez*, 202 F. 3d at 687 (emphasis added; footnote omitted). In a related vein, Plaintiff argues that this Court misapplied the holding of *Seigert v. Gilley*, 500 U.S. 226 (1991), in holding that Plaintiff could not cloak a defamation claim as a constitutional violation. Plaintiff contends that because the motivation for the alleged false statements was to retaliate against him for running for office, *Seigert* is inapplicable. For the reasons expressed in *Suarez*, the Court rejects this argument.

[14] *O'Connor*, 440 F.3d at 127-28.

[15] *Blair*, 608 F.3d at 544-45 (holding that "the First Amendment does not succor casualties of the regular functioning of the political process," (footnote omitted)). *Cf. Ollman v. Evans*, 750 F.2d 970, 1002 (D.C. Cir. 1984) (en banc) (Bork, J., concurring). ("Where politics and ideas about politics contend, there is a First Amendment arena. The individual who deliberately enters that arena must expect that the debate will sometimes be rough and personal.").

[16] *Parks*, 480 F.3d at 840 ("Because the decision not to re-elect Parks . . . was made by the voters of Horseshoe Bend, the defendant cannot be said to have *caused* Parks's alleged injury.") (emphasis in original).

[17] As the Court noted in the previous memorandum opinion, Plaintiff does not allege that he was prevented from obtaining and disseminating his personnel record himself, if he so wished. Even if the action Plaintiff challenges "was illegal or even 'unconstitutional' in an abstract sense . . . does not answer the question raised by this private suit for money damages. . . . Implicit in a deprivation is both a defined right and a loss." *Villaneueva v. McInnis*, 723 F.2d 414, 418-19 (5th Cir. 1984) (quoted in *Cook v. Randolph County, Georgia*, 573 F.3d 1143, 1153 (11th Cir. 2009)).

[18] *See, e.g.*, *Municipal Revenue*, 347 F. App'x at 824-25; *Zilich v. Longo*, 34 F.3d 359, 361-62 (6th Cir. 1994). *See also Vinci v. Qualgliani*, 889 F. Supp. 2d 348, 364 (D. Conn. 2012) (holding, in the employment context, that "[a] public servant's right to be free from retaliation by his or her superiors for exercise of constitutional rights must be balanced against the rights of those other servants of the public interest to be free from unproven or unprovable accusations of wrong doing.").

retaliation cause of action based on [a public official's] speech is necessary to balance the [official's] speech interests with the plaintiff's speech interests."[19] Plaintiff does not allege facts that would rise above this limitation.

### B. Due Process and Equal Protection

"The Fourteenth Amendment prohibits state deprivations of life, liberty, or property without due process of law. . . . [A]n individual does not have a protected property interest in reputation alone."[20] In the motion for reconsideration, Plaintiff recrafts his due process claim, arguing for the first time that he acquired an interest in an honorable discharge after a Pennsylvania court decision in 2009,[21] and that federal and state laws enacted in 2004 and 2005 permit retired law enforcement officers with an honorable discharge to carry concealed weapons, which Plaintiff argues creates a property interest in an honorable discharge.[22] Therefore, according to Plaintiff, defendant Noonan deprived him of due process and equal protection of the laws by denying him an honorable discharge in a secret review in 2011, when others have received an opportunity to be heard.

The Court is not required to address on a motion for reconsideration arguments not raised earlier, but because Plaintiff seeks leave to file an amended complaint to set out these claims,[23] the Court will, in the interest of completeness, note that any such claim relating to Plaintiff's receipt

---

[19] *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 417 (4th Cir. 2006) (quoted in *Municipal Revenue*, 347 F. App'x at 825).

[20] *Thomas*, 463 F.3d at 297 (citations omitted).

[21] *Commonwealth v. Pennsylvania State Troopers Ass'n*, 979 A.2d 442 (Commw. Ct. 2009).

[22] *See* 18 U.S.C. § 926B; 53 P.S. § 753.1, *et seq.*

[23] Plaintiff has not, however, submitted a proposed amended complaint for the Court's consideration.

of an honorable discharge is time-barred as a matter of law: Plaintiff retired in 2005, the concealed-carry laws were enacted in 2004 and 2005, and to the extent that there was any question as to the bearing of an honorable discharge on application of these laws, that question was resolved by court decision in 2009. Therefore, it was no later than 2009 "when the plaintiff [had] a complete and present cause of action, that is, when the plaintiff [could] file suit and obtain relief."[24] The alleged second review in 2011 did not revive the claim as any harm had accrued earlier. Plaintiff therefore filed suit beyond the two-year statute of limitations applicable to his claims.[25]

### C. Qualified Immunity

Finally, the Court notes that Plaintiff makes no arguments regarding qualified immunity, which requires the Court to determine (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct.[26] For the reasons explained above, even if Plaintiff could show the violation of a constitutional right, he could not show that the right was clearly established at the time of the alleged misconduct and Defendants therefore are entitled to qualified immunity.

## IV. CONCLUSION

Plaintiff has failed to state a claim for the violation of any right secured by the United States Constitution. "This case, at its core, is a dispute fueled by the rough and tumble of local politics . . . . 'We are loathe to interpret section 1983 to proscribe what we thus understand to be

---

[24] Wallace v. Kato, 549 U.S. 384, 388 (2007) (internal quotation marks and citations omitted).

[25] See Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003); 42 Pa. Cons. Stat. § 5524.

[26] Saucier v. Katz, 533 U.S. 194, 201 (2001).

traditional political activity.'"[27] Plaintiff's motion for reconsideration will be denied and an order will be entered.

---

[27] *Parks*, 480 F.3d at 840-41 (quoting *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 615 (8th Cir. 1980)).